UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
────────────────────────────

PAMELA MARCOTTE,

              Plaintiff,

    -vs-

CITY OF ROCHESTER,

              Defendant.

**DECISION and ORDER
No. 6:14-cv-6128(MAT)**

────────────────────────────

## I.   Introduction

Represented by counsel, Pamela Marcotte ("Plaintiff") instituted this action against the City of Rochester ("Defendant" or "the City") alleging causes of action for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et seq. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Presently before the Court is Defendant's Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed herein, Defendant's motion is granted.

## II. Background

The factual summary below is drawn from the allegations in the Complaint and Proposed Amended Complaint, and the documents incorporated by reference in those pleadings.

Plaintiff was hired as a Junior Architect by the City in May of 1998. In 2001, she was promoted to Managing Architect.

On March 7, 2012, Plaintiff sent an email to James McIntosh ("McIntosh"), her supervisor, with courtesy copies to Paul Holahan ("Holahan"), Commissioner of the Department of Environmental Services ("DES"), and Tassie R. Demps ("Demps"), Director/BHRM, that stated as follows:

> Jim, Please be advised that I have a good faith belief that I have been subject to discrimination on the basis of sex. Please take prompt, remedial action with regard to my good faith complaints.

Proposed Amended Complaint ("PAC") (Dkt #21-2), ¶ 14.

In April of 2012, Plaintiff filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"), listing as respondents the City, McIntosh, and Holahan. The contents of this complaint ("EEOC #1") are unknown; a copy of it has never been submitted to this Court in any of the three lawsuits filed by Plaintiff against the City.[1] Plaintiff states that "[t]he EEOC issued a right to sue letter and [she] filed a complaint in Federal District Court which was docketed as civil action 12-CV-6416."

---

[1]

On August 3, 2012, Plaintiff instituted Marcotte v. City of Rochester, et al., 6:12-cv-06416(CJS) ("Marcotte I"), which was assigned to District Judge Charles J. Siragusa. In that action, Plaintiff alleged causes of action against Holahan, McIntosh, and the City for discrimination (disparate treatment) and retaliation under the First Amendment and 42 U.S.C. § 1983. Plaintiff also asserted a cause of action for municipal liability against the City but did not assert a Title VII claim. On February 4, 2013, Plaintiff filed a separate action alleging a Title VII claim, see Marcotte v. City of Rochester, 6:13-cv-06055-MAT (W.D.N.Y.) ("Marcotte II"). However, the complaint in Marcotte II was never served on the City. On May 29, 2013, Judge Siragusa dismissed all of the causes of action in Marcotte I with prejudice for failure to state a claim. Plaintiff filed a Notice of Voluntary Dismissal in Marcotte II on the same day.

Plaintiff does not indicate the date that the EEOC issued a right to sue letter with regard to EEOC #1.

On April 23, 2012, Mcintosh, Holahan, and the City Law Department brought a disciplinary charge against Plaintiff pursuant to New York Civil Service Law § 75 ("Section 75"), alleging insubordination because she turned in something to her supervisor regarding performance expectations three days late. A second set of Section 75 charges was filed on May 3, 2012, alleging that Plaintiff had been insubordinate, had lied to her supervisor, and had falsified her time card when she left work 90 minutes early on April 4, 2012, for a doctor's appointment and to attend one of her children's sporting events. Plaintiff states that she worked 90 minutes at home that evening, and filled out her time card as having worked eight hours that day. When McIntosh informed Plaintiff that she would have to use one of her accumulated personal days or sick days to cover the 90-minute absence, she complained to him about her status as an exempt employee under the FLSA.

On July 25, 2012, Plaintiff was placed on paid suspension pending the outcome of a hearing on the Section 75 disciplinary charges. After the hearing, Plaintiff was found not guilty of the April 23, 2012 charge and guilty of the May 3, 2012 charges, although the City did not contest that she had performed 90 minutes of work later in the day at her home. On December 18, 2012, as a

-3-

result of the guilty finding, Plaintiff was demoted eight pay grades, which constituted a $27,239.00 loss in salary per year.

Plaintiff alleges both before and after her demotion, the other Managing Architects in the City's DES, all of whom have been male, have been free to arrive late and leave early without reporting to McIntosh.

On July 31, 2013, Plaintiff filed a charge with the EEOC ("EEOC #2") naming the City as the respondent. Plaintiff alleged retaliation under Title VII "for having filed a previous EEOC charge on or about April 11, 2012, and a federal lawsuit based on sex discrimination on July 12, 2012." EEOC #2, p. 1 (Dkt #27-1). Plaintiff was issued a Right to Sue Notice from the EEOC on December 13, 2013 (Dkt #30-1).

On March 14, 2014, Plaintiff, represented by her former counsel Matthew Fusco, Esq., commenced this action ("Marcotte III") against the City. The Complaint (Dkt #1) alleges retaliation claims under Title VII and the FLSA. The Title VII claim asserts that the Section 75 disciplinary charges in April and May of 2012, and the resulting demotion in December 2012, were issued in retaliation for the filing of EEOC #1 and Marcotte I. The FLSA claim asserts that Plaintiff was disciplined in retaliation for having complained about her status as an exempt employee after she was informed that she would have to use accrued leave time to cover a 90-minute absence from work.

On September 25, 2015, Defendant filed its Rule 12(c) Motion (Dkt #14), which it docketed as a Motion to Dismiss for Failure to State a Claim. Defendant argued that Plaintiff's lawsuit is barred by the doctrine of res judicata and that her Complaint fails to state any plausible claims for relief. On September 28, 2015, Defendant filed a pleading docketed as an Amended Motion to Dismiss for Failure to State a Claim (Dkt #15). However, the exhibits and the supporting memoranda of law submitted in support of both motions appear to be the same, and both are brought under Rule 12(c) rather than Rule 12(b)(6).

On October 8, 2015, Karen Sanders, Esq. ("Sanders") was substituted as Plaintiff's attorney. Plaintiff filed a Memorandum of Law in Opposition to Defendant's Rule 12(c) Motion (Dkt #21-3) as well as a Motion to Amend the Complaint (Dkt #21).

On January 13, 2016, Defendant filed a Memorandum of Law in Opposition to Plaintiff's Motion to Amend and in Further Support of Defendant's Motion (Dkt #24, amending Dkt #23). Defendant asserts that amendment is futile because the Title VII claim in the Proposed Amended Complaint is barred by the doctrine of res judicata. Defendant also argues that Plaintiff has failed to meet pre-conditions of suit for Title VII claim, and that the FLSA claim fails on the merits.

On January 27, 2016, Plaintiff filed a Reply (Dkt #26). On February 4, 2016, Plaintiff's attorney filed a Declaration

("Sanders Dec.") (Dkt #27) in further support of the Motion to Amend. Sanders noted that she received what was purportedly the complete file of Plaintiff's former attorneys in November of 2015. However, that was not the case. On February 3, 2016, Plaintiff provided Sanders some additional documents she had found at home, including a copy of EEOC #2 (Dkt #27-1). Although Sanders was unable to find the notice of right to sue associated with the second charge, she found a reference in an unspecified "different document that a letter dated December 13, 2013[,] was received, and that letter indicated that there was ninety days to bring suit." Sanders Dec., ¶ 13. Sanders noted while she did not yet have a copy of the right to sue notice, "it seems clear there was such a notice, dated December 13, 2013." Id., ¶ 17. Therefore, Sanders concluded, the "jurisdictional prerequisites" for the Title VII had been met. Id., ¶ 16.

With the Court's permission, Defendant filed a Sur-Reply (Dkt #29) and submitted the Declaration of Patrick Beath, Esq. ("Beath Dec.") (Dkt #30), attaching a copy of the December 13, 2013 Right to Sue letter (Dkt #30-1) issued with regard to EEOC #2. Defendant argue that EEOC #2 and the December 13, 2013 right to sue letter do not render the Title VII claim timely because they do not relate to the events forming the basis of the current Title VII retaliation claim.

The motions are now fully submitted and ready for decision.

### III. The Motion to Amend

"Leave to file an amended complaint 'shall be freely given when justice so requires,' FED. R. CIV. P. 15(a), and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility.'" Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Plaintiff requests permission to "correct two erroneous dates" in the Complaint with regard to the Section 75 disciplinary charges and to "correct a number of typographical errors[.]" Pl's Mem. (Dkt #21-3) at 6. Defendant does not object to these requests. Plaintiff also wishes to "add language that makes clear that" Defendant "was aware of [P]laintiff's complaints of gender discrimination by virtue of a March 7, 2012 email. . . ." Id.; Proposed Amended Complaint ("PAC") (Dkt #21-2), ¶ 14.[2] Defendant argues that the proposed amendment is futile and actually establishes its defense of res judicata, since Plaintiff set forth substantially the same allegation in the Marcotte I Amended Complaint. See Marcotte I Proposed Amended Complaint (Dkt #11-2), ¶ 50.

---

[2]     The allegation at issue reads as follows: "On March 7, 2012, [P]laintiff sent an email to James Mcintosh, her supervisor, with courtesy copies to Paul Holahan, Commissioner of the Department of Environmental Services, and Tassie R. Demps, Director/BHRM, that stated: 'Jim, Please be advised that I have a good faith belief that I have been subject to discrimination on the basis of sex. Please take prompt, remedial action with regard to my good faith complaints.'"

Because the Court can dispose of Plaintiff's Complaint, even as amended, the Court will exercise its discretion to grant the Motion to Amend. The operative pleading is now the Proposed Amended Complaint (Dkt #21-2), which will be re-docketed in a separate entry as the First Amended Complaint.

## IV.  Rule 12(c) Standard

On a Rule 12(c) motion for judgment on the pleadings, the court utilizes "the same . . . standard applicable to dismissals pursuant to FED. R. CIV. P. 12(b)(6)." Morris v. Schroder Capital Mgmt. Int'l, 445 F.3d 525, 529 (2d Cir. 2006). Thus, the court "will accept all factual allegations in the complaint as true and draw all reasonable inferences in [the non-movant]'s favor." Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009) (citation omitted). As with a Rule 12(b)(6) motion, to withstand challenge under Rule 12(c), a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Under Rule 12(c), "the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 427 (2d Cir. 2011) (quoting Roberts v. Babkiewicz, 582 F.3d 418,

419 (2d Cir. 2009) (per curiam)). A complaint is also "deemed to include . . . documents that, although not incorporated by reference, are 'integral' to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)). A plaintiff's failure to include matters of which she, as the pleader, "had notice and which were integral to [her] claim . . . may not serve as a means of forestalling the district court's decision on [a 12(c)] motion." Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 44 (2d Cir. 1991).

## IV.  Res Judicata

Defendant has moved to dismiss the Title VII claim in this case under the doctrine of res judicata because the factual issues underlying it were previously addressed in Marcotte I.

"'[A] judgment upon the merits in one suit is res judicata in another where the parties and subject-matter are the same, not only as respects matters actually presented to sustain or defeat the right asserted, but also as respects any other available matter which might have been presented to that end.'" Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992), cert. denied, 506 U.S. 1053 (1993) (quoting Grubb v. Public Utils. Comm'n of Ohio, 281 U.S. 470, 479 (1930); citation omitted; alteration in original). Judgments under Rule 12(b)(6) are "judgments on the merits" "with res judicata effects. . . ." Teltronics Servs., Inc. v. LM Ericsson

Telecomm'n Inc., 642 F.2d 31, 34 (2d Cir.), cert. denied, 450 U.S. 978 (1981) (quotation omitted; ellipsis in original).

As noted above, the Amended Complaint in Marcotte I was dismissed by Judge Siragusa pursuant to Rule 12(b)(6). Thus, its dismissal constitutes a final judgment on the merits for purposes of the res judicata doctrine. The parties in Marcotte I and this suit are the same. Furthermore, the factual predicates for Plaintiff's Title VII retaliation claim in this case and her Section 1983 disparate treatment claim in Marcotte I are the same. In both actions, Plaintiff's allegations focus on the City's issuance of the Section 75 disciplinary charges against her and her demotion based on the hearing officer's finding of guilty on certain of the charges. As Defendant notes, in the Marcotte I amended complaint, Plaintiff alleged facts concerning the purported gender discrimination by McIntosh; her email to McIntosh asserting that she had been subjected to discrimination and requesting that he take prompt remedial action; the filing of EEOC #1; the allegedly retaliatory Section 75 disciplinary charges on April 23, 2012, and May 3, 2012; and the discipline (demotion) imposed as the result of the finding of guilty on certain of those charges. See Marcotte I Amended Complaint, ¶¶ 21-51 (discrimination); 52-57 (disciplinary charges); 58-62 (demotion). Moreover, the Marcotte I amended complaint repeatedly labels the disciplinary charges as "retaliatory." See id., ¶¶ 2, 20, 52, 61, 71, 85, 89. These events

-10-

were alleged in either the Complaint or Proposed Amended Complaint in the instant action.

It is true that Plaintiff here is proceeding on a theory of retaliation under Title VII rather than one of disparate treatment under Section 1983, as she did in Marcotte I. However, "[e]ven claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." L-Tec Electronics Corp. v. Cougar Electronic Org., Inc., 198 F.3d 85, 88 (2d Cir. 1999) (per curiam) (citing Woods, 972 F.2d at 38). The Second Circuit has explained that "[i]t is th[e] identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [the plaintiff] chose to frame her complaint." Woods, 972 F.2d at 39 (citing Berlitz Sch. of Languages of Am., Inc. v. Everest House, 619 F.2d 211, 215 (2d Cir. 1980) ("[W]hatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of res judicata."); other citations omitted).

Plaintiff argues that res judicata does not apply because she has set forth a factual allegation that she  allegedly could not have included in Marcotte I, since it took place after she filed her motion for leave to amend in that action. Specifically, Plaintiff alleges that "the current Managing Architect, a male, has been permitted to come in late and leave early without reporting

his comings and goings to the City." PAC (Dkt #21-2), ¶ 25. The Second Circuit has recognized that "when the second action concerns a *transaction* occurring after the commencement of the prior litigation, claim preclusion generally does not come into play." Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997) (citation omitted; emphasis supplied). In Maharaj, the Second Circuit agreed that res judicata should not have been applied "to [the plaintiff's later] *causes [of action]* because each of them arose out of an event—the dissolution of InterQuant—that occurred more than two and one half years after the filing of the complaint in [the first action]." Id. (emphasis supplied). Unlike in Maharaj, the causes of action in this case and Plaintiff's first discrimination action, Marcotte I, arose out of the *same* events—the email complaining of disparate treatment based on gender, the filing of EEOC #1, the disciplinary charges, and the demotion. See Woods, 972 F.2d at 39 ("Essentially the same underlying occurrence was relevant to both the LMRA and Title VII claims. Both actions centered around Dunlop's firing of Woods, the reasons for termination, and her employment history, physical limitations, and qualifications. . . .") (citations omitted). The subsequent disparate treatment of the male successor to Plaintiff's position as Managing Architect is not a new transaction giving rise to a new claim, and Plaintiff is not pursuing a later arising cause of action based on this event.

Plaintiff alternatively argues that there are "unusual circumstances as to the conduct and competence" of her prior counsel in Marcotte I, Christina Agola, who, during the same time-frame, was being publicly reprimanded by the Second Circuit for her conduct and was being investigated by the Fourth Department Grievance Committee. Although there were certain irregularities in Agola's litigation of Marcotte I, they have no bearing on the appropriateness of applying res judicata here.

In Marcotte I, at the oral argument on the City's motion to dismiss, Judge Siragusa noted that it was unusual that Agola had not included a Title VII claim in that lawsuit. Subsequently, Judge Siragusa learned that Agola had filed Marcotte II, asserting a Title VII claim; apparently, Agola's co-counsel, Ryan Woodworth, Esq., was not aware of the filing of Marcotte II. These irregularities have no effect on the Court's res judicata analysis. In Marcotte I, Judge Siragusa found that Plaintiff did not plead a plausible disparate treatment claim under Section 1983 and, having failed to plead an underlying constitutional violation, her municipal liability claim could not stand. If Agola had included a Title VII disparate treatment claim in Marcotte I, it would have been dismissed on the same basis. Either way, Plaintiff could not avoid the preclusive effect of res judicata on her Title VII retaliation claim, because this claim could have been raised and litigated in Marcotte II. Moreover, Judge Siragusa noted that

-13-

Plaintiff did assert a First Amendment retaliation claim in Marcotte I but withdrew it. Agola's co-counsel, Ryan Woodsworth, Esq., appeared on Plaintiff's behalf at the oral argument on the City's motion dismiss in Marcotte I, and, according to Judge Siragusa, he agreed multiple times that Plaintiff was not presently asserting a retaliation claim. Plaintiff has levied no complaints against Woodworth's performance or competence.

The Second Circuit in Teltronics has noted that "[w]hile it is true that res judicata is not to be mechanically applied, no case has been cited or discovered where relief from res judicata principles has been granted simply because the plaintiff was represented by inexperienced counsel." 642 F.2d at 36 (internal citation omitted). The Court finds that the instant case does not warrant an exception to res judicata. See id. (noting that "to sanction this exception would be to encourage endless litigation" and ignore the principle that in American "jurisprudence 'each party is deemed bound by the acts of [her] lawyer-agent and is considered to have notice of all facts . . . .'" Id. (quoting Link v. Wabash, 370 U.S. 626, 633-34 (1962) (citation omitted; ellipsis in original).

## IV. Failure to Fulfill Title VII's Preconditions to Suit

Defendant also urges dismissal of Plaintiff's Title VII retaliation claim on the basis that it is untimely, if EEOC #1 and the resultant right to sue letter are used to measure compliance

with the limitations period. Alternatively, Defendant argues that Plaintiff failed to exhaust her administrative remedies because EEOC #2 charges different conduct that is not reasonably related to the current Title VII retaliation claim. The Court need not address these arguments in light of its ruling that res judicata bars the Title VII claim of retaliatory treatment.

## V.  Failure to State an FLSA Claim

Defendant argues that Plaintiff fails to state a claim for retaliation under the FLSA because she admits she is an exempt employee and thus outside the statute's protections.

The purpose of the FLSA is to "protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency and general well-being of workers.'" Barrentine v. Arkansas–Best Freight Sys. Inc., 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a); footnote omitted). The FLSA requires covered employers to pay covered employees overtime wages, at the rate of time and a half, for hours in excess of 40 hours worked in a single week. See 29 U.S.C. § 207. Exempt from the FLSA's overtime requirements are employees who are "employed in a bona fide executive, administrative, or professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor])." 29 U.S.C. § 213(a)(1). Given the remedial

nature of the FLSA, employee exemptions must be narrowly construed, and the employer bears the burden of showing that a claimed exemption applies. <u>Martin v. Malcolm Pirnie, Inc.</u>, 949 F.2d 611, 614 (2d Cir. 1991) (citation omitted).

The FLSA's anti-retaliation provision makes it "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [FLSA]." 29 U.S.C. § 215(a)(3). A plaintiff alleging retaliation under the FLSA establishes a <u>prima</u> <u>facie</u> case by showing (1) participation in protected activity known to the employer, such as the filing of an FLSA lawsuit or complaint; (2) an employment action disadvantaging the employee; and (3) a causal connection between the protected activity and the adverse employment action. <u>Mullins v. City of N.Y.</u>, 626 F.3d 47, 53 (2d Cir. 2010) (citation omitted).

The Supreme Court has held that "[t]o fall within the scope of the [FLSA's] antiretaliation provision," a complaint by an employee "must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as *an assertion of rights protected by the statute* and a call for their protection." <u>Kasten v. Saint-Gobain Performance Plastics Corp.</u>, 563 U.S. 1, 131 S. Ct. 1325, 1335 (2011) (emphasis supplied), <u>abrogating</u> <u>Lambert v. Genesee Hosp.</u>, 10 F.3d 46, 55 (2d Cir. 1993)

(holding that FLSA Section 215(a)(3) prohibits only "retaliation for filing formal complaints, instituting a proceeding, or testifying").[3] _Kasten_ confirmed that this standard can be met "by oral complaints, as well as by written ones." _Kasten_, 131 S. Ct. at 1335.

The substantive allegations in support of Plaintiff's FLSA retaliation claim are as follows:

> When Marcotte was informed by Mcintosh that she would have to use one of her accumulated personal days or sick days [to cover a 90-minute absence from work] she complained to him _about her status of an exempt employee_ under the Federal Fair Labor Standards Act.

Complaint (Dkt #1), ¶ 19 (emphasis supplied). According to Plaintiff, Defendant retaliated against her when it "issued disciplinary notice[s] and imposed discipline upon [her]" after "she filed a complaint that as _an exempt employee_, she had to use sick time or personal time to cover the ninety minutes she left work early when she is specified as _an exempt employee_ by the City." _Id._, ¶ 30 (emphases supplied).

Defendant argues that, applying _Kasten_, a "reasonable employer" would not have understood any complaint by Plaintiff as an assertion of rights under the FLSA, because Plaintiff is an exempt employee and not entitled to the statute's protections. Indeed, as Defendant points out, Plaintiff admits in her Complaint

---

[3]

In _Greathouse v. JHS Sec. Inc._, 784 F.3d 105 (2d Cir. 2015), the Second Circuit "overruled what was left of [its] holding in _Lambert_[,]" 784 F.3d at 117, based on _Kasten_.

several times that *she is an exempt employee.* The Court agrees that a reasonable employer would not have understood a complaint by an employee who admits she is exempt from the protections of the FLSA to be "an assertion of rights protected by the [FLSA] and a call for their protection." Kasten, at 131 S. Ct. at 1335.

Furthermore, Plaintiff misapprehends the scope of the FLSA's protections. The crux of her complaint to McIntosh was that—according to Plaintiff—the FLSA unfairly required her, as an exempt employee, to utilize her accrued leave time to cover an unexcused absence from work. In neither her Complaint nor her Proposed Amended Complaint, however, does Plaintiff identify which section of the FLSA allegedly makes it unlawful for employers to require exempt employees to utilize accrued leave time to cover unexcused absences from work.

Defendant suggests that Plaintiff is relying not on the text of the FLSA itself, but on a portion of the Code of Federal Regulations setting forth the "salary basis test," which is used to determine whether an employee is "exempt" under the FLSA. See 29 C.F.R. § 541.602(a) ("Subject to the exceptions provided in paragraph (b) of this section [which are not relevant here], an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked."). Significantly, Plaintiff does not allege that she was threatened with having her pay "docked" as the result of

the 90-minute unexcused absence from work; nor does Plaintiff allege that she was subjected to any improper deductions from her compensation or even that the City has a policy under which pay-docking based on partial-day absences may occur.[4] Thus, Plaintiff has not alleged any basis to contradict her express admission that she is an exempt, salaried employee, or to suggest that Defendant acted in a manner unlawful under the FLSA. Rather, as Defendant argues, Plaintiff appears "to extrapolate from this language a right, as an exempt employee, not to have to use leave time when absent from work." Def's Mem. (Dkt #15-2) at 9.

The great weight of judicial authority, as well as the Department of Labor ("DOL") opinion letters[5] interpreting the regulation, are contrary to Plaintiff's position. That is, the overwhelmingly held view is that charging a partial day absence to an employee's paid leave account does not defeat her exemption status. See Caperci, 43 F. Supp.2d at 92-93 ("[D]oes charging a

---

[4]

The Second Circuit has held that salaried employee may become non-exempt under the FLSA if the employer has a policy of docking the employee's salary for absences of less than a day. Martin v. Malcome Pirnie, Inc., 949 F.2d 611, 615 (2d Cir. 1991) (citations omitted); see also Donovan v. Carls Drug Co., Inc., 703 F.2d 650, 652 (2d Cir. 1983) ("Carls' payroll data clearly show that pharmacists were paid according to an hourly rate and that this hourly amount was the amount deducted for each hour of work missed. A salaried professional employee may not be docked pay for fractions of a day of work missed."); footnote omitted).

[5]

DOL opinion letters are entitled to "considerable deference." Caperci v. Rite Aid Corp., 43 F. Supp.2d 92, 94 (D. Mass. 1999) (citing Auer v. Robbins, 519 U.S. 452, 461 (1997) ("Because the salary-basis test is a creature of the [DOL]'s own regulations, his interpretation of it is, under our jurisprudence, controlling unless plainly erroneous or inconsistent with the regulation."); other citation omitted).

-19-

partial day absence to an employee's paid leave account defeat the professional capacity exemption? The answer, as found in the language of the regulation, . . . DOL opinion letters interpreting that regulation, and the great weight of precedent at both the circuit and district court levels, is 'no.'") (citing Haywood v. North Am. Van Lines, Inc., 121 F.3d 1066, 1070 (7th Cir. 1997); Barner v. City of Novato, 17 F.3d 1256, 1261-62 (9th Cir. 1994); York v. City of Wichita Falls, Tex., 944 F.2d 236, 242 (5th Cir. 1991) (deductions from "sick or vacation leave on an hourly basis . . . do not establish that a person is paid on a wage basis"); Vogel v. American Home Products Corp. Severance Pay Plan, 122 F.3d 1065, 1997 WL 577578, at *5 (4th Cir. 1997) (unpublished opn.); Opinion Letter Fair Labor Standards Act (FLSA), 1993 WL 13652221, at *1 (DOL WAGE-HOUR Apr. 9, 1993) ("Where an employer has bona fide vacation and sick time benefits, it is permissible to substitute or reduce the accrued benefits for the time an employee is absent from work, even if it is less than a full day, without affecting the salary basis of payment, if by substituting or reducing such benefits, the employee receives in payment an amount equal to his or her guaranteed salary."); other citations omitted); see also Castro v. Metropolitan Transp. Auth., No. 04 CIV. 1445 LTS THK, 2006 WL 1418585, at *4 (S.D.N.Y. May 23, 2006) ("Docking an employee's leave balance or other fringe benefits for partial day absences does not change his exemption status as long as his salary

is never docked.") (citing 29 C.F.R. § 541.602(a) (referring to "predetermined" amount of pay); other citations and footnote omitted).

According to the Supreme Court's pronouncements in Iqbal/Twombly, the plausibility standard used in judging the sufficiency of a complaint "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 1950 (quoting FED. R. CIV. P. 8(a)(2)). The facts pleaded in Plaintiff's Complaint and Proposed Amended Complaint do not permit the inference of anything more than the merest possibility of wrongful conduct under the FLSA. Thus, Plaintiff has failed to fulfill the Iqbal/Twombly plausibility standard. See, e.g., Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (affirming dismissal of complaint alleging retaliation under the FLSA where "[t]he facts pleaded in [the plaintiff]'s complaint do not permit [the court] to infer more than the mere possibility of misconduct").

## VI. Conclusion

For the reasons discussed above, Plaintiff's Motion to Amend the Complaint (Dkt #21) is **granted.** The Proposed Amended Complaint

(Dkt #21-2) hereby replaces the Complaint (Dkt #1) as the operative pleading in this matter, and the Clerk of the Court is requested to re-docket the Proposed Amended Complaint (Dkt #21-2) as the "First Amended Complaint." Defendant's Motion to Dismiss the Complaint for Failure to State a Claim (Dkt #14) and Amended Motion to Dismiss for Failure to State a Claim (Dkt #15) are **granted.** Accordingly, the First Amended Complaint is **dismissed with prejudice.** The Clerk of the Court is requested to close this case.

      **SO ORDERED.**

                                     S/Michael A. Telesca

                                  HONORABLE MICHAEL A. TELESCA
                                  United States District Judge

Dated:     March 1, 2016
             Rochester, New York